**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRENDA L. CHAMBERS,

   Plaintiff,

v.             Case No. 8:25-cv-287-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

   Defendant.

_____

## **OPINION AND ORDER**[2]

### **I. Status**

Brenda L. Chambers ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of osteoarthritis in her hips and shoulders; rheumatoid arthritis in her hands, fingers, wrists, knees, feet, and toes; spinal stenosis; shoulder, hand, knee, and back pain; chronic obstructive pulmonary disease; sleep apnea; dry

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

eye syndrome; anxiety; and depression. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed April 4, 2025, at 104, 112, 226. Plaintiff protectively filed an application for DIB on January 12, 2021, alleging a disability onset date of October 1, 2019.[3] Tr. at 198-99. The application was denied initially, Tr. at 103, 104-10, 126-29, and upon reconsideration, Tr. at 111, 112-19, 137-39.[4]

On September 14, 2023, an Administrative Law Judge ("ALJ") held a hearing,[5] during which he heard testimony from Plaintiff, who appeared with a non-attorney representative,[6] and a vocational expert ("VE"). See Tr. at 70-102. On September 28, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 24-37.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her representative in support of the request. See Tr. at 4-5 (Appeals Council exhibit list and order), 61-69 (brief), 192-94

---

[3]     The DIB application was actually completed on January 13, 2021. Tr. at 198. The protective filing date is listed elsewhere in the administrative transcript as January 12, 2021. See, e.g., Tr. at 104, 112.

[4]     Some of these documents are duplicated in the administrative transcript, in both English and Spanish. Citations are to the first time a document appears.

[5]     The hearing was held via videoconference with Plaintiff's consent. See Tr. at 72, 161-62, 182.

[6]     The transcript of the hearing reflects that Plaintiff's representative, Douglas Bissi, is a lawyer. Tr. at 70. But, the appointment of representative form he filled out indicates he is "a non-attorney." Tr. at 122; see also Tr. at 24 (ALJ referring to Mr. Bissi as a "non-attorney representative").

(request for review). On December 9, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On February 5, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in "failing to account for the 'total limiting effects' of Plaintiff's severe rheumatoid arthritis and osteoarthritis, resulting in a [D]ecision that is not supported by substantial evidence." Plaintiff's Brief (Doc. No. 12; "Pl.'s Br."), filed May 7, 2025, at 1; see id. at 10-24. On August 6, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's argument. Then, on August 20, 2025, Plaintiff's Reply Brief—Social Security (Doc. No. 19; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[7]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued...)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where he ended the inquiry based on his findings at that step. See Tr. at 26-36. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 1, 2019, the alleged onset date." Tr. at 26. At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease; rheumatoid arthritis; degenerative joint disease and osteoarthritis of the hips, left knee, and bilateral feet; chronic obstructive pulmonary disease (COPD); and obesity." Tr. at 26 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 28 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 4 hours, and sit for about 6 hours in an 8-hour workday, with normal and customary breaks; cannot climb ladders, ropes, or scaffolds; can occasionally climb a stair; can frequently balance; can occasionally stoop, kneel, and crouch; can never crawl; can frequently reach, handle, and finger, but can only occasionally reach overhead; must avoid concentrated exposure to extreme cold, excessive vibration, and noxious fumes; and must avoid all use of hazardous industrial machinery and exposure to unprotected heights.

Tr. at 29 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as an administrative assistant and an editorial assistant." Tr. at 35 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from October 1, 2019, through the date of th[e D]ecision." Tr. at 36 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given

to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in "failing to account for the 'total limiting effects' of [her] severe rheumatoid arthritis and osteoarthritis, resulting in a

[D]ecision that is not supported by substantial evidence." Pl.'s Br. at 1, 10 (emphasis omitted). Within this argument, Plaintiff contends the ALJ erred specifically by: 1) finding "partially persuasive" the opinions of state-agency medical consultants, id. at 17; 2) finding "unpersuasive" the opinion of treating physician Monica Shah, D.O., id. at 18; 3) finding that an assistive device is not medically necessary, id. at 21; and 4) evaluating Plaintiff's subjective statements, id. at 22.

The undersigned finds the ALJ erred in evaluating whether an assistive device is medically necessary. Reversal and remand are required to reevaluate this issue. On remand, the SSA's findings on this issue will likely impact the findings on all remaining issues (indeed, Dr. Shah opined directly on the assistive device issue). Thus, the SSA on remand shall reconsider all other issues as appropriate. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

When a claimant alleges that an assistive device, such as a cane or walker, is required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and

- 7 -

describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *7 (SSA 1996).

In arguing that the ALJ erred on this issue, Plaintiff attacks the ALJ's finding that no treating provider found the use of an assistive device is medically necessary during the relevant time period. Pl.'s Br. at 21-22; Reply at 3. Responding, Defendant recognizes there are many instances of Plaintiff using a cane in the medical records but contends there are no "prescription[s] for an assistive device after the alleged onset date, nor any documentation of when such device would be required." Def.'s Mem. at 14, 14-16.

Plaintiff testified she had been prescribed a walker and a cane after her knee and hip surgeries (which occurred long prior to the alleged onset date). Tr. at 88. She stated that after the October 2019 alleged onset date, she "talked to [her rheumatology] doctor about [her] issues with ambulating comfortably," and she advised the doctor that she still had a walker and cane. Tr. at 88, 88-90. According to Plaintiff, the doctor indicated that if she "was having problems ambulating, that it would be a good idea for [her] to use the cane or walker . . . because of the gait issues and the balance issues" that she has, including falling on occasion. Tr. at 89. Plaintiff testified she uses a cane or walker every day since at least three years prior to the hearing. Tr. at 89. She indicated she still

uses them "inside the home," particularly if she is "standing in one spot" for five minutes. Tr. at 87.

The ALJ recognized that Plaintiff had been "prescribed a cane or walker after her previous hip and knee surgeries many years before the alleged onset date." Tr. at 35. But, the ALJ determined that "there is no evidence in the record that any of [Plaintiff's] providers found the use of an assistive device to be medically necessary at any time relevant to this determination." Tr. at 35. In discussing the medical evidence, the ALJ noted many instances of Plaintiff walking with an assistive device, but the ALJ found twice that Plaintiff's gait issues were the result of her having bouts of time without receiving proper care for her rheumatoid arthritis. Tr. at 32 ("It must be noted that in January 2021 [when unsteady gait and use of a cane were first noted during the relevant period, Plaintiff] had been without medical treatment for her rheumatoid arthritis for over one year" and was moving during that time), and ("[O]n January 4, 2021, after more than a year of no medical treatment," Plaintiff had an unsteady gait and was using a cane).

The ALJ erred in evaluating whether an assistive device was medically necessary. First, the ALJ's observation of "no evidence in the record that any of [Plaintiff's] providers found the use of an assistive device to be medically necessary at any time relevant to this determination," Tr. at 35, is simply inaccurate. Treating rheumatologist Monica Shah, D.O. authored a medical

source statement on July 25, 2023, in which she was asked: "While engaging in occasional standing/walking, must your patient use a cane or other assistive device?" Tr. at 827. Dr. Shah checked the box indicating, "Yes." Tr. at 827. The form does not use the words "medically necessary," but Dr. Shah was clearly asked about this issue and opined that Plaintiff "must" use an assistive device in the delineated times of "occasional standing/walking." Tr. at 827. This opinion speaks directly to the requirements of the applicable SSR.

To be sure, the ALJ recognized and found "not persuasive" Dr. Shah's overall opinion. Tr. at 34. But, as grounds, the ALJ relied on very few notations of normal gait without the use of an assistive device (while citing exhibits containing numerous irrelevant pages). Tr. at 35. This reliance, combined with the ALJ's findings that Plaintiff's gait only seemed to be affected when she was not receiving proper treatment for her rheumatoid arthritis, see Tr. at 32, are not supported by substantial evidence, see, e.g., Tr. at 601-02 (January 2021 primary records documenting unstable gait, chronic hip and joint pain, and use of cane following move to Florida), 650, 653 (February 10, 2021 rheumatology note of establishing care, rheumatoid arthritis was not optimally controlled, Plaintiff had falls, and was using a cane), 646 (May 26, 2021 suboptimal control of rheumatoid arthritis and use of cane), 639, 642 (August 25, 2021 rheumatologist noting "good response" to new medication but still uses cane), 635 ("moderate response" to new medication in December 2021 but still uses

cane), 799-800 (April 7, 2022 rheumatology noting "use of adaptive device"), 685 (Plaintiff establishing primary care in February 11, 2022: "Her ambulation is also limited as she does need to use walker"), 800, 800-03 (April 7, 2022 use of "adaptive device (cane)" and lack of efficacy of various medications), 780-81 (September 27, 2022 rheumatology noting Plaintiff was tolerating medication but continued to report 2-3 hours of morning stiffness, reported a fall, and used "adaptive device"), 731 (March 27, 2023 new rheumatologist changing medications due to limited effectiveness, noting Plaintiff's use of cane), 739-40 (May 8, 2023 primary care noting ambulation with cane and unsteady gait), 750-51 (July 19, 2023 rheumatology noting Plaintiff was tolerating new medications well, doing better, no falls, but still did use a cane); but see Tr. at 581 (October 21, 2021 normal gait noted), 678 (consultative examiner Adam Greenfield, D.O. noting on January 28, 2022 that Plaintiff "walks with a normal gait and does not use assistive devices" and has "full range of motion" with no "pain, swelling, heat, redness or signs of inflammation of the upper and lower extremities"[8]).

The matter must be reversed and remanded for reconsideration of whether an assistive device is medically necessary.

---

[8] During the hearing, Plaintiff took great issue with her perceived lack of thoroughness of Dr. Greenfield's examination, describing the whole process lasting "probably three or maybe four minutes." Tr. at 96. She also felt he was "not particularly alert that day." Tr. at 96.

## V.    Conclusion

In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider whether an assistive device is medically necessary;

(B)    If appropriate, consider Plaintiff's other arguments on appeal; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2026.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record

- 12 -